**PETROLIA SUPPLY CO. v. HEMPHILL.**
(No. 10482.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 19, 1924.)

1. Sales ⬗354(8)—Allegations held to present sufficient defense by buyer in action for price.

In an action for price of barrels used in oil wells, defendant's allegations that the agreement was that the barrels were accepted by him with the understanding that if, after a fair test, they were not satisfactory, defendant was not to pay for them, and that they were not in fact satisfactory as demonstrated by tests made, *held* to present a sufficient defense.

2. Sales ⬗181(12)—Evidence held to sustain buyer's defense in action for price.

In an action for price of barrels used in oil wells, evidence *held* to sustain buyer's defense that the barrels were delivered to him with the understanding that if, after fair tests made, they were not satisfactory, he was not to pay for them, and that they were not satisfactory.

---

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Customs and usages �købI8—Evidence ⊛ 129(I)—Rejecting evidence as to satisfaction of other buyers and as to seller's custom as to warranties held not error.**

In an action for the price of barrels used in oil wells, in which buyer's defense was that they were to be delivered with the understanding he was not to pay for them unless after tests made they were found to be satisfactory, and that they did not prove satisfactory, the rejection of seller's evidence that the barrels operated to the satisfaction of other well owners in the same district, and that the custom of the company to give warranties of the kind alleged was only, where the company's agent installed the machinery, *held* not error, where plaintiff did not allege such custom and uncontradicted evidence showed that defendant's superintendent who installed the barrels knew how to do so.

**4. Sales ⊛354(7)—Failure of buyer to allege defects specifically held immaterial.**

In an action for the price of barrels in which buyer's defense was not strictly upon a warranty but was predicated on an agreement that he was not to pay for the barrels unless by tests made he found them satisfactory, and that they were not satisfactory, buyer's failure to allege more specifically the defects in the barrels, *held* immaterial.

**5. Appeal and error ⊛I050(I)—Erroneous admission of evidence not reversible unless prejudicial.**

To justify reversal of a judgment on the ground evidence was erroneously admitted, it must appear that the evidence was prejudicial.

Appeal from Young County Court; W. H. Reeves, Judge.

Action by the Petrolia Supply Company against M. R. Hemphill. From a judgment granting partial relief, plaintiff appeals. Affirmed.

Fred T. Arnold and W. W. Price, both of Graham, for appellant.

Marshall & King, of Graham, for appellee.

CONNER, C. J. The appellant sued upon a verified account totaling $223.74. The defendant in his answer admitted liability and alleged due tender for all the items in the account except a charge made on January 30, 1922, for two California working barrels, gas fitted, for $94.50 each, totaling $189, and a charge of $6 for drayage on the delivery of the same. As to these items the defendant alleged that he did not contract therefor, but—

"That said machinery was bought for a specific purpose and was warranted by the plaintiff to do and perform the work required by the defendant, and that it was agreed and understood between the parties that defendant should have a reasonable time within which to put said machinery to a test, that if such test was satisfactory to the defendant that such negotiations were to be in effect for the sale, and the title would pass to the defendant, and

the defendant should be liable to the plaintiff for the price thereof."

It appears that the barrels charged for were contrivances for use in the bottom of oil wells to more readily extract the oil from the contiguous soil, and by further allegations of the answer it was charged that the defendant at the time of the negotiations for the sale "informed the plaintiff of the purpose for which he desired to use said material, and stated to plaintiff that unless the same would perform the work and labor in the manner and in the capacity and according to the character of work desired to be done, that he would not buy the same."

It is further alleged that—

The defendant "put said machinery to a full and fair test, and that the same wholly failed to meet the requirements of his purpose, and wholly failed to come up to the warranty given by the plaintiff, and that said machinery would not perform and carry out the work that the defendant had informed plaintiff he desired to be done; that after a reasonable and fair test of said machinery, the defendant informed the plaintiff of such failure of warranty, and failure to perform the work, and requested plaintiff to repossess said machinery, as he would not consummate the alleged sale, and further offered to reimburse the plaintiff for any reasonable outlay in removing said machinery."

The case was tried before the court without a jury, and resulted in a judgment for the plaintiff in the sum of $28.74, which had been duly tendered in court, but denied the plaintiff judgment for the balance of the account, amounting to $195, and the plaintiff has appealed.

The evidence of defendant was to the effect that at the time of the negotiations in question he was pumping his oil wells with ordinary barrels in general use that cost $7 each, but that he had had trouble with them, and that in the fall of 1921 Mr. Pope, a traveling agent of the Petrolia Supply Company, visited him several times, trying to sell the California working barrels, and that finally, upon the assurance of Mr. Pope that if he would try the California barrels, and "if they did not satisfy me after a trial that all I had to do was to pull them out and he would come out and get them, and that the pumps would not cost me a cent."

Defendant further testified that the pumps were sent out on January 30, 1922, and were put in two of the wells, but that—

"The pumps would not work. We tried them for two weeks and then pulled them out. They have been in my warehouse ever since, subject to being taken out by the Petrolia Supply Company. * * * I told Mr. Pope that the barrels were no account and were not satisfactory to me and I did not want them. * * * The trouble we had with the barrels was that they would choke up, fill up with sand and break the pump line. This necessitated pulling the entire pump and barrel out of the well, which would

---

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

take a day, and then it would require a day to put them back. They would choke up as soon as put back. We would only get about one day's pumping out of three days' work. * * * The barrels were taken by me with the understanding that they would be returned if they were not satisfactory to me. They were not satisfactory to me and I refused to pay for them."

[1, 2] We are of the opinion that the allegations of the defendant's answer referred to presented a sufficient defense, and hence the court did not err in overruling the plaintiff's demurrer to the answer, and that the evidence stated, which was evidently credited by the court, is amply sufficient to sustain such defense.

In 24 R. C. L. §§ 726 and 727, it is said, so far as pertinent:

"Frequently in contracts of sales it is stipulated that the article shall be satisfactory to the buyer, and it is held that such a provision does not affect the mutuality of the contract. A stipulation that the article shall be satisfactory, without stating to whom, means that it shall be satisfactory to the buyer. * * * The authorities are not in accord on the question whether the dissatisfaction of the buyer, where he is in fact and in good faith dissatisfied, must be based on reasonable grounds. Some authorities take the view that if the article is such as the buyer ought to be satisfied with, that is, if there is no reasonable ground on which to base his dissatisfaction, he is bound to accept it. The better view, however, is that, if there is no bad faith, and the buyer is honestly dissatisfied, his judgment is conclusive irrespective of whether he 'had reasonable grounds for dissatisfaction or not. Thus where the contract was for the purchase of a suit of clothes to be made to the satisfaction of the buyer, it has been held that, though the clothes when made were such as the buyer ought to have been satisfied with, he still had the right to reject them as unsatisfactory."

The author in following sections discusses other phases of the subject, citing authorities to the effect that the buyer has not the right to arbitrarily reject an article for the purpose of avoiding the payment therefor, and that good faith should be exercised, stating that the burden, however, of showing bad faith in the refusal to accept is upon the seller. These phases of the subject are not important at this time, inasmuch as plaintiff in his pleadings does not present the issue of bad faith on the part of the defendant in rejecting the articles in question. Should other authority be desired, it is stated in 35 Cyc. p. 220, that—

"The rule that has received its sanction being that if the buyer is honestly and in good faith dissatisfied, it is immaterial that he ought in fact to be satisfied and that his dissatisfaction is unreasonable; that the law will not make contracts for people sui juris. It is, however, very distinctly recognized in this line of decisions that the dissatisfaction must be real and in good faith, and not result from ca-

price or a dishonest design to be dissatisfied in any event."

See, also, Phelps v. Willard, 16 Pick. (Mass.) 29; Exhaust Ventilator Co. v. C., M. & St. P. Ry. Co., 66 Wis. 218, 28 N. W. 343, 57 Am. Rep. 257; Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 637. In the case last cited, it is said, quoting from the headnote:

"That, in case of an executory agreement to furnish a piece of machinery guaranteed to work satisfactorily, the person to whom it is furnished has the right to make a trial of it, reasonable as respects both time and manner, before formally accepting it, and the right to reject it if it does not work satisfactorily to him. If, upon reasonable trial, it does not work satisfactorily, it is not necessary for him to return it (in the absence of an express agreement to that effect); but it is sufficient if, within a reasonable time, he notify the person furnishing it in substance that it does not work satisfactorily and that he declines to accept it"—citing McCormick Harvester Works Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846.

See, also, note in 54 Am. Rep. 711 et seq. to the case of Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. 749.

[3, 4] It follows, we think, under the allegations and proof in this case and the authorities cited, that it is immaterial that the court rejected evidence to the effect that the California barrels operated to the satisfaction of other well owners in the South Bend district, and that the custom of the company to give warranties of the kind alleged was only in cases where the agent of the company himself installed the machinery. The plaintiff did not allege such custom, and the defendant's superintendent testified that he had installed the barrels and knew how to do so, which testimony seems not to have been contradicted. Nor do we think it material that the allegations of the defendant's answer with reference to the alleged warranty were not specific in detailing the bad effects of the machinery. It is to be noted that the defense was not, strictly speaking, upon a warranty, which exists only as a part of a contract of sale or as collateral thereto. In this case the defense against the items of the account under consideration was not predicated upon a sale and damages sought for a failure to comply with the warranty. But the references to a warranty in defendant's answer is to be construed, we think, rather as averments of the representations or inducements to the defendant's agreement to accept and test the machinery.

[5] It may also be true, as urged, that some of the testimony admitted by the court was irrelevant and immaterial. But in all cases to require a reversal of a judgment on this ground it must appear that the evidence was prejudicial. See Day v. Stone, 59 Tex. 612; Berry v. Ry. Co., 72 Tex. 620, 10 S. W. 726; Church v. Waggoner, 78 Tex. 200, 14 S. W.

581; Court Rule 62a. This is especially true in trials before the court. Smith v. Hughes, 23 Tex. 248; Douglass v. Duncan, 66 Tex. 122, 18 S. W. 343; Tevis v. Armstrong, 71 Tex. 59, 9 S. W. 134; Andrews v. Key, 77 Tex. 35, 13 S. W. 640; Mullaly v. Noyes (Tex. Civ. App.) 26 S. W. 145.

Nor do we think the judgment below can be disturbed on the ground that there was a ratification. The court evidently found there was no ratification, and evidence of the defendant was to the effect that he used the barrels in question only so far as was necessary to make the tests in contemplation. Questions, relating to the defendant's cross-plea for damages in the sum of $900, are, of course, immaterial, in view of the fact that the court found against defendant on his cross-plea.

We conclude that no reversible error has been shown, and the judgment must be affirmed.